1  Vanessa R. Waldref
   United States Attorney
2  Eastern District of Washington
   George J.C. Jacobs III
3  Assistant United States Attorneys
   Post Office Box 1494
4  Spokane, WA 99210-1494
5  Telephone: (509) 353-2767

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

OCT 0 7 2022

SEAN F. McAVOY, CLERK
                    DEPUTY
RICHLAND, WASHINGTON

6

7              UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF WASHINGTON
8

9  UNITED STATES OF AMERICA,              4:21-CR-6042-MKD-14

10                    Plaintiff,

11                                        PLEA AGREEMENT
                vs.
12

13  MOHAMMED F. AL-HIMRANI,

14                    Defendant.

15

16      Plaintiff, United States of America, by and through Vanessa R. Waldref, United

17  States Attorney for the Eastern District of Washington, George J.C. Jacobs, III,

18  Assistant United States Attorney for the Eastern District of Washington, and

19  Defendant MOHAMMED F. AL-HIMRANI (hereinafter "Defendant" and/or

20  "MOHAMMED F. AL-HIMRANI" and/or "AL-HIMRANI [-2]") and Defendant's

21  counsel, Stephen R. Hormel, agree to the following Plea Agreement:

22      1.    Guilty Pleas and Maximum Statutory Penalties:

23      Defendant, MOHAMMED F. AL-HIMRANI, agrees to plead guilty to 2 felony

24  counts of the Indictment returned by the Grand Jury on December 7, 2021 (Counts

25  126 and 127).

26      Defendant MOHAMMED F. AL-HIMRANI agrees to plead guilty to the

27  following counts in the Indictment that each carry the statutory maximum penalties set

28  forth below:

Plea Agreement- 1 of 21

    (a)    Count 126 charging Conspiracy to Commit Mail and Wire Fraud, in violation of 18 U.S.C. §§ 1341, 1343, and 1349. Defendant understands that the maximum statutory penalties for this offense is not more than a 20-year term of imprisonment; not more than a 3-year term of supervised release; a fine not to exceed $250,000 or the greater of twice the pecuniary gain or twice the gross loss; the payment of restitution; and a $100 special penalty assessment;

    (b)    Count 127 charging Conspiracy to Commit Health Care Fraud, in violation of 18 U.S.C. §§ 1347 and 1349. Defendant understands that the maximum statutory penalties for this offense is not more than a 10-year term of imprisonment; not more than a 3-year term of supervised release; a fine not to exceed $250,000 or the greater of twice the pecuniary gain or twice the gross loss; the payment of restitution; and a $100 special penalty assessment;

Defendant understands that the Court has the authority to impose consecutive sentences for each conviction. Defendant understands that a violation of a condition of supervised release carries an additional penalty of re-imprisonment, *see* 18 U.S.C. § 3583(e), without credit for time previously served on post-release supervision.

2.    <u>The Court is Not a Party to the Agreement:</u>

The Court is not a party to this Plea Agreement and may accept or reject it. Sentencing is a matter solely within the discretion of the Court. Defendant understands that the Court is under no obligation to accept any recommendations made by the United States and/or by the Defendant; that the Court will obtain an independent report and sentencing recommendation from the U.S. Probation Office; and that the Court may, in its discretion, impose any sentence it deems appropriate up to the statutory maximum penalties stated in the Plea Agreement.

Defendant acknowledges that no promises of any type have been made to the Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands that the Court is required to consider the applicable sentencing guideline range but may depart or vary upward or downward under the appropriate circumstances.

Defendant also understands that should the sentencing judge decide not to accept any of the parties' recommendations, that decision is not a basis for withdrawing from this Plea Agreement, or a basis for withdrawing his pleas of guilty.

3.     Waiver of Constitutional Rights:

Defendant understands that by entering his pleas of guilty, Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

      (a)     The right to a jury trial;

      (b)     The right to see, hear, and question the witnesses;

      (c)     The right to remain silent at trial;

      (d)     The right to testify at trial; and

      (e)     The right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands he retains the right to be assisted through the sentencing and any direct appeal of the conviction and sentence by an attorney, who will be appointed at no cost if Defendant cannot afford to hire an attorney.  Defendant also acknowledges that any pretrial motions currently pending before the Court are waived.

4.     Elements of the Offense:

The parties agree that, in order to convict Defendant of Conspiracy to Commit Mail and Wire Fraud, in violation of 18 U.S.C. §§ 1341, 1343, and 1349, as charged in Count 126, the United States would have to prove beyond a reasonable doubt the following elements:

      -     *First*, beginning no later than July 4, 2017, and continuing through on or about September 25, 2020, in the Eastern District of Washington and elsewhere, Defendant MOHAMMED F. AL-HIMRANI together with Co-Defendants named in the Indictment and others, in some way

1  and manner, agreed to try and accomplish a common and unlawful

2  plan to commit mail and wire fraud as charged in the Indictment; and

3  - *Second*, Defendant MOHAMMED F. AL-HIMRANI knew the

4  unlawful purpose of the plan and willfully joined the plan.

5  The parties agree that, in order to convict Defendant of Conspiracy to Commit

6  Health Care Fraud, in violation of 18 U.S.C. §§ 1347 and 1349, as charged in Count

7  127, the United States would have to prove beyond a reasonable doubt the following

8  elements:

9  - *First*, beginning no later than July 4, 2017, and continuing through on

10  or about September 25, 2020, in the Eastern District of Washington

11  and elsewhere, Defendant MOHAMMED F. AL-HIMRANI together

12  with Co-Defendants named in the Indictment and others, in some way

13  and manner, agreed to try and accomplish a common and unlawful

14  plan to commit healthcare fraud as charged in the Indictment; and

15  - *Second*, Defendant MOHAMMED F. AL-HIMRANI knew the

16  unlawful purpose of the plan and willfully joined the plan.

17  5.    Factual Basis and Statement of Facts:

18  The parties stipulate and agree that the United States could prove the following

19  facts beyond a reasonable doubt at trial, and these facts constitute an adequate factual

20  basis for Defendant's guilty pleas.  This statement of facts does not preclude either

21  party from presenting and arguing, for sentencing purposes, additional facts which are

22  relevant to the guideline computation or sentencing, unless otherwise prohibited in

23  this agreement.

24  *Conspiracy to Commit Mail/Wire Fraud and Health Care Fraud (Counts 126, 127)*

25  Beginning no later than July 4, 2017, and continuing through on or about

26  September 25, 2020, in the Eastern District of Washington and elsewhere, Defendant

27  AL-HIMRANI [-2] together with Co-Defendants ALI F. AL-HIMRANI (hereinafter,

28  "AL-HIMRANI [-1]"), MOHAMMED BAJAY (hereinafter, "BAJAY"), AMEER R.

MOHAMMED (hereinafter, "MOHAMMED"), AMAR ABDUL-SALAM (hereinafter, "ABDUL-SALAM"), FAROOQ S. YASEEN (hereinafter, "YASEEN"), AHMAD K. BACHAY, (hereinafter, "BACHAY [-1]"), MARIA ELENA SANCHEZ, (hereinafter, "SANCHEZ [-1]") and others:

    (a)    knowingly, and with intent to defraud, devised and intend to devise a material scheme and artifice to defraud various insurance companies and to obtain money and property from insurance companies by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises, were false and fraudulent when made, and did knowingly cause to be delivered by mail matter by the United States Postal Service and by private and commercial interstate carrier, according to directions thereon, for the purpose of executing the scheme and artifice;

    (b)    knowingly, and with intent to defraud, devised and intend to devise a material scheme and artifice to defraud various insurance companies and to obtain money and property from insurance companies by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises, were false and fraudulent when made, and did knowingly transmit and cause to be transmitted in interstate commerce, by means of wire communication, certain writings, signs, signals, pictures and sounds, for the purpose of executing the scheme and artifice.

Defendant AL-HIMRANI [-2] together with Co-Defendants AL-HIMRANI [-1], BAJAY, MOHAMMED, ABDUL-SALAM, YASEEN, BACHAY [-1], SANCHEZ [-1] and others devised and executed a scheme and artifice to defraud insurance companies and to obtain money and property from insurance companies by materially false and fraudulent pretenses, representations, and promises. Defendant AL-HIMRANI [-2] together with Co-Defendants AL-HIMRANI [-1], BAJAY,

MOHAMMED, ABDUL-SALAM, YASEEN, BACHAY [-1], SANCHEZ [-1] and others conspired to commit the crimes of mail fraud and wire fraud, arising from staged accidents occurring on February 1, 2018, and September 9, 2019. The fraud loss arising from these two staged accidents is $118,701.36.

The object of the scheme and artifice to defraud was for Defendant AL-HIMRANI [-2] together with Co-Defendants AL-HIMRANI [-1], BAJAY, MOHAMMED, ABDUL-SALAM, YASEEN, BACHAY [-1], SANCHEZ [-1] and others to enrich themselves by defrauding victim insurance companies through filing and collecting payment on fraudulent insurance claims for property damage, wage loss, and bodily injury. Defendant AL-HIMRANI [-2] together with Co-Defendants AL-HIMRANI [-1], BAJAY, MOHAMMED, ABDUL-SALAM, YASEEN, BACHAY [-1], SANCHEZ [-1] and others, caused insurance companies to pay out approximately $118,701.36 in fraudulent claims arising from the two staged accidents. During the scheme, SANCHEZ [-1] was employed as a "case manager" at a personal injury law firm and handled some of the fraudulent claims for some of the co-Defendants.

Defendant AL-HIMRANI [-2] together with Co-Defendants AL-HIMRANI [-1], BAJAY, MOHAMMED, ABDUL-SALAM, YASEEN, BACHAY [-1] and others planned and staged automobile accidents by intentionally causing collisions between each other's automobiles. The Defendants would deliberately drive the pre-planned "at fault" vehicle into the pre-planned "no fault" vehicle at a pre-planned location. A Defendant would then make an emergency call to 911 falsely claiming an "accident" occurred. Defendant AL-HIMRANI [-2] together with Co-Defendants AL-HIMRANI [-1], BAJAY, MOHAMMED, ABDUL-SALAM, YASEEN, BACHAY [-1], SANCHEZ [-1] made and caused to be made false material representations to police, medical personnel, and insurance company representatives about the manner in which the staged accident occurred and the cause, nature and extent of their injuries and vehicle damage.

After a staged accident, Defendant AL-HIMRANI [-2] together with Co-Defendants AL-HIMRANI [-1], BAJAY, MOHAMMED, SANCHEZ [-1] submitted and caused to be submitted fraudulent property damage, personal injury protection (medical, loss of wages) and bodily injury claims with victim insurance companies. In furtherance of the scheme, One or more conspirators hired personal injury lawyers to represent them in connection with their false and fraudulent claims. Defendant AL-HIMRANI [-2] together with Co-Defendants AL-HIMRANI [-1], BAJAY, MOHAMMED, SANCHEZ [-1] falsely claimed that they were in an accident when, in truth and fact, they were involved in a deliberate, staged collision carried out for the sole purpose of fraudulently claiming insurance losses. Defendant AL-HIMRANI [-2] together with Co-Defendants AL-HIMRANI [-1], BAJAY, MOHAMMED, SANCHEZ [-1] communicated with the victim insurance companies about the fraudulent claims via interstate telephone calls, facsimiles, emails, and mailings.

Defendant AL-HIMRANI [-2] together with Co-Defendants AL-HIMRANI [-1] and BAJAY and MOHAMMED sought emergency room and medical treatment for fictitious, fabricated, and exaggerated accident symptoms and injuries. Defendant AL-HIMRANI [-2] together with Co-Defendants AL-HIMRANI [-1], BAJAY, MOHAMMED, SANCHEZ [-1] would then cause medical and billing records, arising from medical treatment the conspirators sought following their staged accidents, to be submitted to the victim insurance companies.

During the claim process for the staged accidents, Defendant AL-HIMRANI [-2] together with Co-Defendants AL-HIMRANI [-1], BAJAY, MOHAMMED, SANCHEZ [-1] and others made and caused to be made various false representations to the victim insurance companies, including as to (a) the conditions that caused the crash or accident; (b) who was driving at the time of the crash; (c) the true identities of the individuals involved; (d) the income and employment status of the individuals involved; and (e) whether and to what extent they suffered injuries as a result of the staged automobile accident. One or more of the conspirators and the personal injury

Plea Agreement- 7 of 21

lawyers representing them collected payouts on the conspirators' fraudulent claims from the victim insurance companies. Defendant AL-HIMRANI [-2] together with Co-Defendants AL-HIMRANI [-1], BAJAY, MOHAMMED, ABDUL-SALAM, YASEEN, BACHAY [-1], SANCHEZ [-1] caused victim insurance companies to issue payments to them and their representatives via mailed check and/or electronic transfer to settle fraudulent personal injury protection (medical, loss of wages), bodily injury, and property damage claims arising from staged accidents.

Defendant AL-HIMRANI [-2] together with Co-Defendants AL-HIMRANI [-1], BAJAY, MOHAMMED, ABDUL-SALAM, YASEEN, BACHAY [-1], SANCHEZ [-1] and others conspired to execute a scheme to defraud health care benefit programs and to obtain, by means of false and fraudulent pretenses and representations money and property owned by, and under the custody and control of, health care benefit programs[1] as defined in 18 U.S.C. § 24(b), in connection with the delivery of and payment for healthcare benefits, items and services.

*February 1, 2018, Staged Automobile Accident*

On February 1, 2018, Defendant AL-HIMRANI [-2] and Co-Defendant AL-HIMRANI [-1] staged an accident at the intersection of S Ranier Avenue and W 10th Avenue in Kennewick, Washington. The staged accident involved AL-HIMRANI [-2] purposely driving a 2014 Dodge Charger[2] into a 2013 Kia Sorento driven by AL-

_____

[1] Nationwide and National General.

[2] AL-HIMRANI [-2] obtained approximately $19,998 in financing to purchase the Dodge Charger. When the staged accident occurred, AL-HIMRANI [-2] owed the lienholder approximately $14,850.56. As a result of the staged accident, the insurance company paid off the lienholder, thereby relieving AL-HIMRANI [-2] of monthly car payments. Several weeks after the staged accident, AL-HIMRANI [1] purchased the intentionally crashed Dodge Charger from Copart-Salvage Car Auctions for

1   HIMRANI [-1]. AL-HIMRANI [-1] and AL-HIMRANI [-2] subsequently filed, and
2   caused to be filed, fraudulent insurance claims in which they falsely represented and
3   adopted each other's false representations that, among other things, they were
4   involved in an accident and suffered bodily injury, wage loss, and property damage as
5   a result of the accident. On Co-Defendant AL-HIMRANI [-1]'s behalf, Defendant
6   SANCHEZ [-1] sent by facsimile materially false documents to the insurance
7   company in furtherance of the scheme. AL-HIMRANI [-1] and AL-HIMRANI [-2]
8   received settlement payouts totaling approximately $55,185.25 from Nationwide
9   Insurance.

10                    *September 9, 2019, Staged Automobile Accident*
11           Co-Defendants BAJAY and YASEEN purchased a 2013 Hyundai Sonata below
12   the Kelly Blue Book value and wanted to make money by using the vehicle to stage an
13   accident and collect insurance monies. Initially, BAJAY and AL-HIMRANI [2] each
14   offered to pay MOHAMMED $1,000 to deliberately crash the 2013 Hyundai Sonata,
15   but he declined. They then offered MOHAMMED $1,500 to crash the Hyundai Sonata
16   and he agreed. As part of the agreement, MOHAMMED was instructed to register the
17   vehicle in his name and obtain insurance. On September 3, 2019, MOHAMMED
18   applied for insurance for the 2013 Hyundai Sonata, with an effective coverage date of
19   September 9, 2019. As part of the scheme, BAJAY and YASEEN paid to register the
20   Hyundai Sonata in MOHAMMED's name and paid for the insurance held in
21   MOHAMMED's name.
22           On September 9, 2019, AL-HIMRANI [-2], BAJAY, YASEEN, MOHAMMED,
23   ABDUL-SALAM and BACHAY [-1] staged an accident on East Ranch Road in
24   Kennewick, Washington. When MOHAMMED became hesitant about deliberately
25   crashing the 2013 HYUNDAI Sonata, ABDUL-SALAM agreed to deliberately crash it

26   _____
27   $4,474.70. As part of the scheme AL-HIMRANI [-1] then "gifted" the Dodge
28   Charger to AL-HIMRANI [-2].

and he was paid for doing so. ABDUL-SALAM purposely crashed the 2013 Hyundai Sonata. Neither BAJAY, HIMRANI [-2] nor MOHAMMED were in the 2013 Hyundai Sonata at the time of impact. As part of the scheme, they were in an "escape" SUV with BACHAY [-1] and YASEEN. After ABDUL-SALAM deliberately crashed the Hyundai Sonata, he got into the "escape" SUV and was driven away from the scene by BACHAY [-1] and YASEEN before police arrived. BAJAY, HIMRANI [-2] and MOHAMMED falsely represented to police and the insurance company that MOHAMMED was driving the 2013 Hyundai Sonata and they were injured in an accident. AL-HIMRANI [-2], BAJAY and MOHAMMED subsequently filed, and caused to be filed, fraudulent insurance claims in which they falsely represented and adopted each other's false representations that, among other things, they were involved in an accident and suffered bodily injury, wage loss,[3] and property damage as a result of the accident. AL-HIMRANI [-2], MOHAMMED and BAJAY received settlement payouts totaling approximately $63,516.11 from National General. As part of the insurance fraud scheme, MOHAMMED received lost wage payments and a check for $10,601.55 from the insurance company. He notified BAJAY, cashed the check and gave the proceeds to BAJAY. BAJAY split the $10,601.55 fraudulent insurance monies with YASEEN. BAJAY also told MOHAMMED he would meet with YASEEN and AL-HIMRANI [2] to discuss what to pay MOHAMMED. BAJAY and AL-HIMRANI [-2] each paid MOHAMMED approximately $1,000 and agreed to pay his rent and utilities. They also gave him a phone. ABDUL-SALAM was also paid by the conspirators for his role in driving the 2013 Hyundai Sonata and deliberately crashing it.

---

[3] On November 1, 2019, AL-HIMRANI [-2] applied for Personal Injury Protection (PIP) benefits, indicating he was employed at AL-HIMRANI [-1]'s business, DGHM Transport LLC. BAJAY reported to the insurance company that he was employed at the same company.

6.    The United States Agrees:

     (a)    Not to File Additional Charges:

The United States Attorney's Office for the Eastern District of Washington agrees not to bring any additional charges against Defendant based upon information in its possession at the time of this Plea Agreement and arising out of Defendant's conduct involving illegal activity charged in the Indictment, unless Defendant breaches this Plea Agreement any time before sentencing.

7.    United States Sentencing Guideline Calculations:

Defendant understands and acknowledges that the United States Sentencing Guidelines (hereinafter "USSG") are applicable to this case and that the Court will determine Defendant's applicable sentencing guideline range at the time of sentencing.

     (a)    Base Offense Level:

The parties agree and stipulate that Defendant's Base Offense Level is 7. *See* USSG § 2B1.1(a).

     (b)    Specific Offense Characteristics:

The parties agree and stipulate that Defendant's Base Offense Level be increased 8-levels[4] for a loss greater than $95,000 but less than $150,000 attributable to Defendant AL-HIMRANI [-2] and his conspirators (arising from the staged accidents on February 1, 2018, and September 9, 2019). Defendant acknowledges that the United States will recommend that Defendant's base offense level be increased 2-levels because the offense involved sophisticated means and Defendant intentionally engaged in or caused the conduct constituting sophisticated means.[5] Defendant reserves the right to object.

---

[4] USSG §2B1.1(b)(1)(E).

[5] USSG §2B1.1(b)(10)(C).

Plea Agreement- 11 of 21

The parties have no agreement whether any other specific offense characteristics are applicable. The United States and Defendant may argue for or against any adjustments and/or enhancements under the USSG noted in the Presentence Investigation Report.

//

(c)    Mitigating Role:

Defendant intends to recommend that his offense level be decreased 2-levels on the basis that he was a minor participant in criminal activity. USSG §3B1.2(b). The United States can object.

(d)    Multiple Count Analysis:

The parties agree that Counts 126 and 127 should be grouped together. USSG §3D1.2(c).

(e)    Acceptance of Responsibility:

If Defendant pleads guilty and demonstrates a recognition and an affirmative acceptance of personal responsibility for the criminal conduct; provides complete and accurate information during the sentencing process; does not commit any obstructive conduct; accepts this Plea Agreement; and enters pleas of guilty no later than October 20, 2022, the United States will move for a 3-level downward adjustment in the offense level for the Defendant's timely acceptance of responsibility, pursuant to USSG §3E1.1(a), (b).

The parties agree that the United States may at its option and upon written notice to Defendant, not recommend a 3-level reduction for acceptance of responsibility if, before sentencing, Defendant is charged or convicted of any criminal offense whatsoever, or if Defendant tests positive for any controlled substance.

(f)    Criminal History:

The parties make no agreement on Defendant's criminal history category, which shall be determined by the Court after the Presentence Investigative Report is completed.

8.    <u>Departure:</u>

The Defendant is free to move for a departure and/or variance under 18 U.S.C. § 3553. The United States intends to seek a guidelines sentence.

//

//

9.    <u>Incarceration:</u>

The United States agrees to recommend a sentence of imprisonment at the low-end of the adjusted sentencing range under the USSG as determined by the Court at the time of sentencing. The Defendant is free to recommend any legal sentence he deems appropriate. Again, the Defendant understands that the Court will ultimately determine the applicable sentencing guideline range and is not bound to follow the recommendations of the parties and that the Court may also depart or vary downward or upward under the appropriate circumstances from the applicable advisory sentencing range.

10.    <u>Criminal Fine:</u>

The parties are free to make whatever recommendation concerning the imposition of a criminal fine that they believe is appropriate.

11.    <u>Restitution:</u>

The parties agree restitution is required pursuant to 18 U.S.C. §§ 3663(a), 3663A, and 3664. Further, pursuant to 18 U.S.C. § 3663(a)(3), the Defendant voluntarily agrees to pay the agreed upon restitution amount in exchange for the United States not bringing additional potential charges, regardless of whether counts of the Indictment dealing with such losses will be dismissed as part of this Plea Agreement. With respect to restitution, the parties agree to the following:

(a)    <u>Restitution Amount and Interest:</u>

The parties agree that the Court should order Defendant to pay restitution in the amount of $118,701.36. The parties agree that $55,185.25 of this amount shall be ordered joint and several with Co-Defendant AL-HIMRANI [1]. The parties further

Plea Agreement- 13 of 21

agree that $63,516.11 of this amount shall be ordered joint and several with co-Defendants BAJAY, YASEEN and MOHAMMED. The parties agree that the amount of $118,701.36 reflects the total joint and several restitution amount owed by the co-defendants for the February 1, 2018, and September 9, 2019, staged accidents that the Defendant was involved in. *See* 18 U.S.C. § 3664(h). The parties agree that Defendant's payment of $118,701.36 will fully satisfy his restitution obligation. The interest on this restitution amount should be waived.

        (b)    Payments:

The Court should order Defendant to pay $118,701.36 in restitution. The parties agree the Court will set a payment schedule based on his financial circumstances. *See* 18 U.S.C. § 3664(f)(2), (3)(A). That being said, Defendant agrees to pay not less than 10% of his net monthly income towards his restitution obligation.

        (c)    Treasury Offset Program and Collection:

Defendant understands the Treasury Offset Program collects delinquent debts owed to federal agencies. If applicable, the TOP may take part or all of Defendant's federal tax refund, federal retirement benefits, or other federal benefits and apply these monies to Defendant's restitution obligations. *See* 26 U.S.C. § 6402(d); 31 U.S.C. § 3720A; 31 U.S.C. § 3716.

Defendant also understands the United States may, notwithstanding the Court-imposed payment schedule, pursue other avenues to ensure the restitution obligation is satisfied, including, but not limited to, garnishment of available funds, wages, or assets. *See* 18 U.S.C. §§ 3572, 3613, and 3664(m). Nothing in this acknowledgment shall be construed to limit Defendant's ability to assert any specifically identified exemptions as provided by law, except as set forth in this Plea Agreement.

Until a fine or restitution order is paid in full, Defendant agrees fully to disclose all assets in which Defendant has any interest or over which Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or third party. Defendant agrees to truthfully complete the Financial Disclosure Statement that

Plea Agreement- 14 of 21

will be provided by the earlier of 30 days from Defendant's signature on this plea agreement or the date of Defendant's entry of a guilty plea, sign it under penalty of perjury and provide it to both the United States Attorney's Office and the United States Probation Office. Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on Defendant upon the signing of this Plea Agreement. Until such time as the fine or restitution order is paid in full, Defendant agrees to provide waivers, consents or releases requested by the U.S. Attorney's Office to access records to verify the financial information.

Defendant understands and agrees that pursuant to 18 U.S.C. §3614, Defendant may be resentenced to any sentence which might have originally been imposed if the court determines that Defendant has knowingly and willfully refused to pay a fine or restitution as ordered or has failed to make sufficient bona fide efforts to pay a fine or restitution.

(d)    Notifications:

Defendant agrees to notify the Court and the United States of any material change in his economic circumstances (e.g., inheritances, monetary gifts, changed employment, or income increases) that might affect his ability to pay restitution. *See* 18 U.S.C. § 3664(k). Further, Defendant agrees to notify the Financial Litigation Unit of the United States Attorney's Office before Defendant transfers any interest in property with a value exceeding $1,000 owned directly or indirectly, individually or jointly, by Defendant, including any interest held or owned under any name, including trusts, partnerships and corporations. This obligation ceases when the restitution is paid-in-full.

Defendant agrees to notify the United States of any address change within 30 days of that change. *See* 18 U.S.C. §3612(b)(F). This obligation ceases when the restitution is paid-in-full.

12.    Judicial Forfeiture:

The parties agree forfeiture applies. *See* 18 U.S.C. § 981(a)(1)(C); 18 U.S.C. § 982(a)(7); 28 U.S.C. § 2461(c). With respect to forfeiture, the parties agree to the following:

(a)    Forfeitable Property:

Defendant, MOHAMMED F. AL-HIMRANI (hereafter "Defendant") stipulates and agrees to forfeit all right, title, and interest, to the United States, in all property, real or personal, which constitutes or is derived from proceeds traceable to offenses in violation of 18 U.S.C. §§ 1341, 1343, 1347 and 1349, and any property traceable to such property, including, but not limited to, the following listed assets:

- $11,500.00 U.S. currency seized by the Federal Bureau of Investigation pursuant to the execution of a federal search and seizure warrant on or about May 28, 2020.

The above-listed real property is the subject of a related civil forfeiture action filed in the United States District Court for the Eastern District of Washington, entitled *United States v. $40,667.00 U.S. Currency*, Civil Case No. 4:20-CV-5217-TOR. Defendant stipulates and agrees that the above-listed currency is directly forfeitable property and is civilly forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) as property which constitutes or is derived from proceeds obtained from violation(s) of 18 U.S.C. §§ 1341, 1343, and/or 1347; and/or for any other legal basis supporting civil forfeiture.

Defendant stipulates and agrees to the entry of an order of forfeiture in civil case 4:20-CV-5217-TOR. forfeiting the currency to the United States and waives further notice of the civil forfeiture proceedings pending against the currency. Defendant stipulates and agrees to testify truthfully in any forfeiture proceeding, including the above referenced civil forfeiture action. Defendant stipulates and agrees to execute any and all forms and pleadings necessary to effectuate such forfeiture. Defendant stipulates and agrees to comply with all requests made by the United States that are made in order to pass clear title of the currency to the United States.

(b)     <u>Application of Forfeited Property to Restitution</u>

It is the parties' mutual understanding that the United States Attorney's Office will seek approval to apply the proceeds of any forfeited assets to Defendant's restitution obligations. Defendant recognizes the final decision to approve this application rests with the Attorney General. *See* 18 U.S.C. § 981(d), (e); *see also* 28 C.F.R. 9 *et. seq.*

(c)     <u>Cooperation on Forfeited Assets:</u>

Defendant agrees to cooperate with the United States in passing clear title on all forfeited assets and to execute any and all forms and pleadings necessary to effectuate such forfeiture of assets. Defendant also agrees to assist the United States in locating any assets that 1) are the proceeds of illegal conduct (as outlined in this Plea Agreement) and 2) have not been dissipated. If such assets are located, then Defendant will stipulate to their forfeiture.

(d)     <u>Waivers:</u>

Defendant agrees to waive oral pronouncement of forfeiture at the time of sentencing. *See* Fed. R. Crim. P. 32.2(b)(4)(B).

Defendant agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with the Plea Agreement on any grounds, including a claim that forfeiture in this case constitutes an excessive fine or punishment.

Defendant further agrees to hold the United States, and its agents and employees, harmless from any and all claims whatsoever in connection with the investigation, the prosecution of charges, and the seizure and forfeiture of property covered by this Plea Agreement.

13.     <u>Supervised Release:</u>

The parties agree to recommend that the Court impose a 3-year term of supervised release. The parties are free to advocate for any special conditions they believe are appropriate.

14.    <u>Mandatory Special Penalty Assessment:</u>

Defendant agrees to pay the $200 ($100 per count) mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington. *See* 18 U.S.C. § 3013.

//

//

15.    <u>Payments While Incarcerated:</u>

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, then Defendant agrees to earn the money to pay toward these obligations by participating in Bureau of Prisons' Inmate Financial Responsibility Program.

16.    <u>Effect on Immigration Status:</u>

Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses. Removal and other immigration consequences are the subject of a separate proceeding, however, and Defendant understands that no one, including his attorney or the District Court, can predict to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

17.    <u>Waiver of Attorney's Fees and Costs:</u>

Defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including without limitation any charges to be dismissed pursuant to this plea agreement and any charges previously dismissed).

18.  Additional Violations of Law Can Void Plea Agreement:

The parties agree that the United States may at its option and upon written notice to Defendant, withdraw from this Plea Agreement or modify its recommendation for sentence if, before sentencing, Defendant is charged or convicted of any criminal offense whatsoever or if Defendant tests positive for any controlled substance.

19.  Appeal Rights:

Defendant understands that he has a limited right to appeal or challenge the conviction and sentence imposed by the Court.  Defendant hereby expressly waives his right to appeal his convictions, sentence and fine, but reserves his right to appeal any restitution order if it exceeds $118,701.36 and forfeiture order if it exceeds $11,500.00.  Defendant further expressly waives his right to file any post-conviction motion attacking his convictions and sentence to include any restitution order, including a motion pursuant to 28 U.S.C. § 2255, except one based upon ineffective assistance of counsel based on information not now known by Defendant and which, in the exercise of due diligence, could not be known by Defendant by the time the Court imposes the sentence.

20.  Integration Clause:

The parties acknowledge that this document constitutes the entire Plea Agreement between the parties, and no other promises, agreements, or conditions exist between the parties concerning this case's resolution.  This Plea Agreement is binding only upon the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.  The parties agree that this agreement cannot be modified except in writing that is signed by the United States and Defendant.

Approval and Signature

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Vanessa R. Waldref
United States Attorney

George J.C. Jacobs III
Assistant United States Attorney

Date 10/7/2022

I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreements with my attorney. I understand and voluntarily enter into the Plea Agreement. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promise or inducements have been made to me, other than those contained in this Plea Agreement and no one has threatened or forced me in any way to enter into this Plea Agreement. I am agreeing to plead guilty because I am guilty.

MOHAMMED F. AL-HIMRANI
Defendant

Date 10/06/2022

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept Defendant's pleas of guilty.

Stephen R. Hormel
Attorney for Defendant

Date 10/6/2022

I hereby certify that I have read and translated the entire foregoing document to the Defendant in a language with which he is conversant. If questions have arisen, I

Plea Agreement- 20 of 21

have notified the Defendant's counsel of the questions and have not offered nor given legal advice nor personal opinions.

_____     _____
Interpreter                              Date     10/6/22